


**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EMR/GK/TBM
F. #2018R01375

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 6, 2022

By Email and ECF

The Honorable Eric R. Komitee
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Marcos Jimenez-Rodriguez
Criminal Docket No. 21-11 (EK)

Dear Judge Komitee:

The government respectfully submits this letter in opposition to the defendant's application for pretrial release dated September 2, 2022. See Dkt. No. 95. For the reasons set forth in the government's original motion for pretrial detention dated April 7, 2021, attached hereto as Exhibit A, and for the reasons set forth below, the government submits that no combination of conditions can secure the safety of the community and the defendant's appearance at trial.

## I. Procedural and Factual Background[1]

Between approximately 1997 and 2018, the defendant, along with his brother Leonardo and his sister Melisa, ran a family organization based in New York and Tenancingo, Mexico, that used force, fraud and coercion to cause young women in Mexico to engage in prostitution in the United States. As set forth in the government's original motion for pretrial detention, the defendant and his siblings conspired to lure victims into

[1] As permitted by the Second Circuit, the government proceeds by factual proffer in support of its motion for a permanent order of detention. See United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000); United States v. Ferranti, 66 F. 3d 540, 542 (2d Cir. 1995). As this proffer seeks only to articulate facts sufficient to justify detention, it is not a complete statement of all of the evidence of which the government is aware or will seek to introduce at trial.

romantic relationships with the defendant and his brother Leonardo, pressured those victims to travel to the United States, and used physical, mental and emotional abuse to force them to work in prostitution in New York and several other states.

Among the victims the defendant conspired with his siblings to traffic over this twenty-year period were two young women whom Leonardo met in Mexico, groomed with false promises of love and brought to the United States to live with Marcos and Melisa in New York. Leonardo forced these women to work in prostitution in brothels in New York and other states, and took all the money that they made. Leonardo physically and mentally abused these victims—often in the presence of the defendant and Melisa—in order to control them and continue to force them to work for him. On one occasion, Leonardo locked one victim in a bedroom for days; on another occasion he pulled her by the hair through a bedroom window to prevent her from escaping via a fire escape.

The defendant and Melisa took deliberate and substantial steps to assist Leonardo in trafficking these victims, including by keeping a close watch over them, directing their actions, collecting the proceeds of their work in prostitution, and sending portions of that money back to Mexico to members of the Jimenez-Rodriguez family—including Leonardo, who lived in Mexico at several different times during the charged conspiracy. For example, at Leonardo's direction, the defendant smuggled a second victim into the United States, who lived with the defendant and Melisa while Leonardo remained in Mexico, and she was forced to engage in prostitution. This victim was required to provide all the money she earned to the defendant and Melisa, who would then send the funds back to Leonardo and other members of the Jimenez-Rodriguez family. When Leonardo later arrived in the United States, he discovered that this victim had withheld some of the funds she had earned and, while Melisa and the defendant were in the house, viciously beat her. Melisa instructed this victim not to report the incident to the police and the victim complied.

The defendant also personally groomed a third victim, whom he met in Mexico, brought to the United States and subjected to vicious beatings, emotional cruelty and mental abuse in an effort to force her to work in prostitution. Although the defendant did not succeed in forcing this victim to engage in commercial sex, he did force her to work for him at brothels and to assist him in driving women to prostitution appointments, and he alone kept all the money earned. Melisa taunted the defendant that if he could not successfully convince this victim to engage in prostitution, he would always be poor. Enraged at this victim's unwillingness to engage in prostitution, the defendant subjected her to regular, violent abuse—often in the presence of Melisa. Among other things, the defendant punched and hit the victim, struck her with electrical cords and belts and choked her to the point of losing consciousness. On more than one occasion, the defendant forced the victim to have sex with him after beating her. The victim finally escaped from the defendant and other members of the Jimenez-Rodriguez family after the defendant returned to Mexico to find another woman whom he could force to work in prostitution on his behalf.

On January 8, 2021, a grand jury returned an indictment charging the defendant, Leonardo and Melisa with sex trafficking conspiracy, in violation of 18 U.S.C. § 1594(c) (Count One), interstate prostitution, in violation of 18 U.S.C. § 2422(a) (Count Three), alien smuggling conspiracy, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i) (Count Five), and distribution of prostitution proceeds, in violation of 18 U.S.C. §§ 1952(a)(1)(A) and 1952(b)(1) (Count Six). The indictment also charged Leonardo with sex trafficking, in violation of 18 U.S.C. § 1951 (Count Two), and charged the defendant with attempted sex trafficking, in violation of 18 U.S.C. § 1594(c) (Count Four). That same day, the Honorable Peggy Kuo, Magistrate Judge for the Eastern District of New York, signed warrants authorizing the arrest of the defendants.

The defendant and Melisa were arrested on April 7, 2021 at their Queens apartment, where much of the above-described abuse occurred. At the time of his arrest, law enforcement agents recovered $1100, 100 rounds of .38 caliber bullets and 37 rounds of .41 caliber bullets from the defendant's room in the apartment. That same day, the Honorable Lois Bloom, Magistrate Judge for the Eastern District of New York, entered a permanent order of detention pending trial.

Despite the fact that the government swiftly unsealed the indictment and arrest warrant against Leonardo for purposes of his arrest and extradition, Leonardo was not arrested in Mexico until May 4, 2022.

## I. Count Four of the Indictment

As an initial matter, the government agrees with the defendant that 18 U.S.C. § 3299, which eliminated the statute of limitations for substantive sex trafficking offenses under 18 U.S.C. §1591, does not expressly apply to 18 U.S.C. §1594. As a result, Count Four of the indictment is likely barred by the statute of limitations. For that reason, the government will move the Court to dismiss Count Four of the Indictment at the status conference on September 6, 2022.

## II. The Court Should Deny the Defendant's Motion

The defendant continues to pose a significant danger to the community and a risk of flight, and the Court should deny his motion and continue his detention pending trial.

### A. Legal Standard

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). While a finding of dangerousness must be supported by clear and convincing evidence, Ferranti, 66

F.3d at 542, risk of flight can be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). In considering risk of flight, courts have found that where the evidence of guilt is strong, it provides "a considerable incentive to flee." Id. at 1046. The possibility of a severe sentence likewise creates a strong incentive to flee. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses with significant maximum terms had potent incentives to flee).

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also LaFontaine, 210 F.3d at 130–31. In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery." Id. (internal quotation marks omitted). Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) (per curiam) ("Roman has twice been convicted of weapon possession – one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to Roman's dangerousness.").

B. Analysis

i. The Defendant Poses a Danger to the Community

The Court should not release the defendant, because no condition or combination of conditions will protect members of the community from the danger he poses or secure his appearance at trial.

First, there can be no dispute that the nature of the charged offenses—including conspiring to bring young women to the United States from Mexico and traffic them in commercial sex—is serious. As described in the government's initial detention motion, the defendant's conduct over the twenty years of the charged conspiracy is revealing

as to both his character and the danger that his release would pose to the identified victims in this case and other members of the community.[2]

In addition, despite the defendant's efforts to discount the strength of the evidence against him, the evidence of his crimes is strong. At trial, the government expects that multiple witnesses will testify in detail about the defendant's violent, cruel and calculated conduct over the twenty-year period of the charged conspiracy, during which he and his siblings agreed to abuse multiple victims, force them into prostitution, and take the money they made. The government also expects to elicit testimony about the defendant's personal campaign of physical violence against a victim in order to attempt to force her to work in prostitution, which is direct evidence of that conspiracy. In other words, the defendant's claim that the "witnesses' testimony regarding [him] is mostly innocuous," Def. Ltr. at 4, is both baseless and incorrect.

What's more, even though neither the materials provided by the government in discovery nor the information contained in the government's search warrants represent the whole of the government's evidence against the defendant, these materials do corroborate the witnesses that the government expects to call. To take just one example, the wire transfer records reflect that, while Leonardo was in Mexico, the defendant and Melisa collected prostitution proceeds from the women that Leonardo was trafficking and sent that money to Leonardo—strong evidence of the conspiracy between them.

ii. The Defendant Poses a Risk of Flight

The defendant should also not be released because he poses a serious risk of flight. On the sex trafficking conspiracy alone, the defendant is facing a significant amount of jail time upon his conviction—up to life imprisonment—and the fact that, if convicted, he will almost certainly be deported. He has no legal status in the United States, has manifestly strong connections to Mexico, and were he released he could easily cross the border by foot or car even without travel documents.

If anything, the time that has passed since the defendant's arraignment has made the risk of flight even stronger, because the example of the defendant's brother and co-conspirator Leonardo demonstrates the ability of members of the Jimenez-Rodriguez family to avoid apprehension in Mexico. Not only was Leonardo a fugitive for more than a year after the defendant, but he has still not been extradited to the United States to face the

[2] The defendant is plainly aware of the identities of the victims in this case, as the government identified by name the Jane Does in the indictment and search warrant affidavits on September 1, 2022. See ECF Docket No. 91.

charges against him. Like his brother, were the defendant to be released he could easily flee and avoid arrest and prosecution for his crimes.

In light of his significant risk of flight, moreover, the defendant's proposal of home detention is insufficient because it "at best elaborately replicate[s] a detention facility without the confidence of security such a facility instills." United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993). Here, such an arrangement is wholly inadequate to ensure that the defendant will not flee from justice.

iii. The Conditions at the MDC Do Not Warrant Release

The defendant has also not presented a "compelling reason" for release under 18 U.S.C. § 3143 or for temporary release under 18 U.S.C. § 3142(i). Although certain extreme medical circumstances may present compelling reasons warranting a highly circumscribed release, the defendant has not established that his circumstances warrant such an extraordinary measure in this case.

III. Conclusion

For the foregoing reasons, the government respectfully requests that the Court continue to detain the defendant pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Erin Reid
Gillian Kassner
Tara McGrath
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel (by email)

# EXHIBIT A



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ML:EMR/GK/TBM
F. #2018R01375

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 7, 2021

By Email and ECF

The Honorable Lois Bloom
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Marcos Jimenez-Rodriguez, et al.
Criminal Docket No. 21-11 (EK)

Dear Judge Bloom:

The government respectfully submits this letter to request a permanent order of detention with respect to the defendants Marcos Jimenez-Rodriguez and Melisa Jimenez-Rodriguez. For the reasons set forth below, the government submits that no combination of conditions can secure the defendants' appearance at trial and the safety of the community.

I. Procedural and Factual Background[1]

Between approximately 1997 and 2018, the defendants were members of a family organization based in New York and Tenancingo, Mexico, that used force, fraud and coercion to cause young women in Mexico to engage in prostitution in the United States (the "Jimenez-Rodriguez Trafficking Organization"). Members of the Jimenez-Rodriguez Trafficking Organization lured victims into romantic relationships through false promises of love and support and pressured the victims to travel to the United States with promises of a better life. Once they smuggled the victims into the United States, the defendants Marcos Jimenez-Rodriguez and Melisa Jimenez-Rodriguez conspired with at least one other member of the Jimenez-Rodriguez Trafficking Organization to force the victims into prostitution. The victims worked at brothels and other locations in New York and several other states, including but not limited to Connecticut, New Jersey, Maryland, Virginia, Boston, Philadelphia and Washington,

[1]The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.

D.C. Members of the organization used violence and threats of violence to compel the victims to continue working in prostitution.

During the charged time period, the defendants maintained a home base at an apartment in Queens, New York, where the victims lived with them at various times. The defendant Melisa Jimenez-Rodriguez instructed the victims on how to prostitute and provided the victims with condoms and phone numbers of prostitution clients to call. The defendant Marcos Jimenez-Rodriguez delivered victims to brothels and prostitution dates, oversaw the operations of brothels and subjected at least one victim to brutal physical beatings in an effort to force her to prostitute for him. Both defendants actively supervised the victims' activities and ensured the victims did not leave their traffickers or report the ongoing violence to law enforcement. The defendants also took all of the proceeds that the victims made from prostitution and regularly sent those proceeds to members of the organization back in Mexico through wire transfers and shipments of cash.

On January 8, 2021, a grand jury returned an indictment charging the defendants with sex trafficking conspiracy, in violation of 18 U.S.C. § 1594(c) (Count One), interstate prostitution, in violation of 18 U.S.C. § 2422(a) (Count Four), alien smuggling conspiracy, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i) (Count Five), and distribution of prostitution proceeds, in violation of 18 U.S.C. §§ 1952(a)(1)(A) and 1952(b)(1) (Count Six). The indictment also charges the defendant Marcos Jimenez-Rodriguez with attempted sex trafficking, in violation of 18 U.S.C. § 1594(c) (Count Three). That same day, the Honorable Peggy Kuo, Magistrate Judge for the Eastern District of New York, signed warrants authorizing the arrest of the defendants.

Earlier today, federal agents arrested the defendants at the Queens apartment where they carried out many of the charged crimes. At the time of the arrests, the agents recovered $1100, 100 rounds of .38 caliber bullets and 37 rounds of .41 caliber bullets from Marcos Jimenez-Rodriguez's room in the apartment, among other items.

## II. The Court Should Enter a Permanent Order of Detention

### A. Legal Standard

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). While a finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), risk of flight can be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. See 18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings, and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination. Most proceed on proffers. Id. at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or even for discovery." Id. (internal quotation marks omitted). Indeed, the Second Circuit has reversed district courts where they have not credited the government's proffer, including proffers with respect to a defendant's dangerousness. See, e.g., Mercedes, 254 F.3d at 437 ("Roman has twice been convicted of weapon possession – one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to Roman's dangerousness.").

B. Analysis

i. The Defendants Pose a Danger to the Community

Each of the factors referenced above weighs heavily against pre-trial release. First, there can be no dispute that the nature of the charged offenses is serious. As set forth above, the defendants are charged with conspiring with other members of the Jimenez-Rodriguez Trafficking Organization to violently traffic young women for more than twenty years. The defendants were both hands-on members of the organization who supervised the victims, ensured the victims' continued prostitution and made sure that prostitution proceeds were turned over to the organization. In addition, the defendant Marcos Jimenez-Rodriguez regularly and viciously beat at least one victim in an effort to force her to prostitute for him.

Second, the evidence of the defendants' guilt is strong. The defendants' arrest comes at the end of a long-term investigation conducted by the Department of Homeland Security, Homeland Security Investigations, and includes not only the testimony of multiple victims of the organization but also phone evidence, wire remitter records, travel records, border crossing records and publicly filed family and real estate records, among other documents.

Third, the brazenness and callousness of the defendants' conduct over the charged time period reveals their disregard for the law and the well-being of others. In particular, the defendants' demonstrated willingness to rely on physical abuse, threats and intimidation to control the actions of their victims demonstrates that their release would jeopardize not only the safety of their identified victims but also other young women in the New York City region.

Taken together, all of these factors show that no bail package will protect members of the community from the danger posed by the defendants.

ii. The Defendants Pose a Risk of Flight

The defendants should also be detained because they pose a serious risk of flight. Given the significant jail time they face upon conviction, they have a strong incentive to flee the jurisdiction. See United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond to Mexico); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms of 105 years imprisonment created potent incentives to flee); United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (possibility of a severe sentence heightens the risk of flight). Moreover, the defendants are both citizens of Mexico and have strong ties to Mexico, where the Jimenez-Rodriguez Trafficking Organization is based, which demonstrate their ability to flee and the significant risk that they will do so.

III. Conclusion

For the foregoing reasons, the government respectfully requests that the Court issue a permanent order of detention.

Respectfully submitted,

MARK J. LESKO
Acting United States Attorney

By: /s/
Erin Reid
Gillian Kassner
Tara McGrath
Assistant U.S. Attorneys
(718) 254-7000

cc: Defense Counsel (by email)